Plaintiff has filed no objections to this Report and Recommendation. It amply describes plaintiff's total non-compliance with his discovery obligations, and establishes more than sufficient grounds for the sanction of dismissal under Rule 37. The R&R is therefore adopted as the decision of this Court granted defendants' motion to dismiss. The Clerk is directed to enter judgment accordingly.

SO ORDERED: 8/15/19

Digitally signed by Brian M. Cogan

_____
USDJ

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
ELIAS ARNETT,

                *Pro se* Plaintiff

    -against-

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF
VETERAN AFFAIRS, DR. JOHN P. FITZGERALD,
and DR. APRIL ADAMS SZAFRAN,

                Defendants.
------------------------------------------------------------------X

*SUA SPONTE*
**REPORT &**
**RECOMMENDATION**

CV 17-3339 (BMC) (AKT)

**A. KATHLEEN TOMLINSON, U.S. Magistrate Judge:**

I.     **PRELIMINARY STATEMENT**

*Pro se* Plaintiff Elias Arnett ("Plaintiff") commenced this action against the United States of America, the United States Department of Veteran Affairs, Dr. John P. Fitzgerald, and Dr. April Adams Szafran ("Defendants"), pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, *et seq.*, ("FTCA") for injuries suffered as a result of Defendants' alleged medical malpractice. *See generally* Plaintiff's Complaint ("Compl.") [DE 1]. Although multiple conferences before the undersigned were held in this action, the case failed to make significant headway owing primarily to the *pro se* Plaintiff's repeated failure to comply with discovery orders and, most significantly, his failure to retain a required medical expert.

On December 13, 2018, Defendants moved this Court to dismiss Plaintiff's Complaint as a discovery sanction, pursuant to Fed. R. Civ. P. 37(b)(2)(v). *See generally* Defendants' Motion to Dismiss ("Pl.'s Mot.") [DE 22]. No opposition to that motion has been filed. In light of the

underlying history of the case as discussed below, the Court has no alternative but to recommend to Judge Cogan that Defendants' motion to dismiss be GRANTED.

## II.   PROCEDURAL BACKGROUND

Plaintiff filed his Complaint in this matter on June 5, 2017. *See* DE 1. On November 1, 2017, Plaintiff filed a motion "to request an extension of time to retain an attorney." DE 5/6. On November 3, 2017, this Court sought additional information about Plaintiff's circumstances, noting that service had not been effected and, as a result, "[t]here are some complications with Rule 4 which impact plaintiff's motion." DE 7. On November 17, 2017, Plaintiff filed a letter explaining that his attempts to retain several different attorneys were unsuccessful and arguing that his attempts constituted "good cause" sufficient to permit an extension of time to effect service and retain counsel. DE 8. On November 21, 2017, the Court issued the following Order:

> Although the Court understands that Plaintiff has made good faith efforts to find an attorney, that in itself does not establish "good cause" as that term is defined in the case law of the Second Circuit. However, the Court is granting Plaintiff extraordinary relief to the following extent: Plaintiff will **have one final opportunity** to obtain counsel and to serve the Complaint by January 8, 2018. If Plaintiff has not obtained counsel, he must proceed *pro se* and take the necessary steps to serve the defendants with the Complaint by January 8, 2018. If Plaintiff needs assistance, he is encouraged to contact the staff of the Pro Se Office here in the Courthouse (631-712-6060). If Plaintiff does not present proof of service showing that the Complaint was served by January 8, 2018, this Court will have no alternative but to recommend to Judge Azrack[1] that Plaintiff's case be dismissed.

---

[1]   This matter was subsequently reassigned several times and is now pending before Judge Cogan.

DE 9 (emphasis in original).  Plaintiff filed proof of service of the Summons and Complaint on January 8, 2018, indicating that both were served upon the Defendants on December 22, 2017. *See* DE 10.  Defendants served and filed their Answer shortly thereafter.  *See* DE 11, 12.

This Court set its Initial Conference for June 18, 2018 to give the *pro se* Plaintiff the opportunity to retain counsel as he had requested.  Defendants' counsel was directed to serve the Initial Conference Scheduling Order on the Plaintiff and to file proof of such service on ECF. *See* DE 13.  When the case was called on the morning of June 18, 2018, however, the Court learned that the Defendants had not served Plaintiff with the Initial Conference Scheduling Order.  As a result, the Plaintiff did not appear and the Court put the Initial Conference over to July 2, 2018.  *See* DE 14.

On July 2, 2018, Plaintiff and counsel for the Defendants appeared for the re-scheduled Initial Conference.  *See* DE 16.  At that time, Plaintiff again asked the Court to adjourn the conference so that he could retain counsel.  The Court declined that request, explaining to the Plaintiff that the Court had already granted him three prior adjournments for that purpose.  *See id*.  The Court then (1) directed Plaintiff to provide Defendants' counsel with executed HIPAA-compliant releases within two weeks, (2) set a schedule in place for the initial phase of discovery, and (3) scheduled September 25, 2018 for the Discovery Status Conference once paper discovery had been exchanged.  *See id*.  Plaintiff was also

> reminded that in order to proceed with this case, he must obtain a medical expert to testify in this action. Otherwise, plaintiff's case cannot proceed. . . . By the time plaintiff appears here for the September 25, 2018 Discovery Status Conference, he must be prepared to advise the Court that he has obtained the necessary medical expert. Otherwise, the plaintiff is running the risk of this Court recommending to Judge Azrack that his case be dismissed.

*Id*.

3

On September 25, 2018, Plaintiff and Defendants' counsel appeared for the Discovery Status Conference. *See* DE 18. At that time, Plaintiff again requested an adjournment of the conference, this time so that he could find a medical expert. *See id*. The Court explained to the Plaintiff that he had had ample time to find an expert and pointed out the Court could not continue to adjourn this matter as it had previously done. *See id.* Plaintiff also informed the Court that he had not provided Defendants' counsel with the necessary HIPAA authorizations as directed and had not responded to Defendants' document demand. *See id.* The Court stated to the Plaintiff that his inability to find an expert was a separate issue and in no way prevented him from providing Defendants' counsel with the HIPAA releases or from responding to Defendants' document demands. *See id.* The Court then issued the following rulings:

> The Court reluctantly granted Plaintiff ***one final*** adjournment of this matter in order for the Plaintiff to retain an expert.
>
> The Court also provided Plaintiff with HIPPA releases at today's conference, and informed Plaintiff that he had ***one week*** from today to return the executed HIPPA releases to Defendant's counsel, meaning that they must be postmarked no later than October 2, 2018.
>
> Similarly, the Court instructed Plaintiff that he had ***one week*** from today's conference to respond to counsel's document demands. These too must be postmarked no later than October 2, 2018.
>
> The Court told Defendant's counsel that if he did not receive either the completed HIPPA releases or the document production, counsel was to notify the Court.
>
> The Court emphasized to Plaintiff that this was his ***final opportunity*** to move this action forward, and that if he failed to comply with any of the three directives set forth today (retaining an expert by the date of the next conference, providing HIPPA releases postmarked by October 2, and providing his document production postmarked by October 2), the Court will have no alternative but to recommend to Judge Azrack that Plaintiff's case be dismissed.

4

September 25, 2018 Civil Conference Minute Order [DE 18] (emphasis in original). The Court also scheduled a further Status Conference for November 28, 2018. *See id.*

On November 28, 2018, Plaintiff and Defendants' counsel appeared before the Court as directed. *See* DE 20. Unfortunately, the *pro se* Plaintiff informed the Court that he still had not retained an expert for his medical malpractice claim. *See id*. The Court recounted the previous warnings given to Plaintiff and pointed out that in light of the procedural history of the case, specifically Plaintiff's continued failure to comply with the Orders issued by the Court, the case could not proceed. *See id.* The Court granted Defendants' counsel leave to file a Rule 37 motion by December 14, 2018 seeking dismissal as a discovery sanction. The Court informed Plaintiff of his right to oppose the motion once it was filed. The deadline for Plaintiff's opposition was set at January 4, 2019. *See id.* the Court cautioned that it did not intend to extend these deadlines. Further, the Court stayed all other action in the case pending review of the anticipated Rule 37 motion. *See id.*

Defendants filed and served their Rule 37 motion to dismiss on December 13, 2018. *See* DE 22. No opposition to that motion was ever filed by the Plaintiff.

### III. DISCUSSION

#### A. Applicable Legal Principles

The subsection of Rule 37 of the Federal Rules of Civil Procedure relevant to the instant motion provides as follows:

> (2) *Sanctions Sought in the District Where the Action Is Pending.*
>
> > (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> \* \* \*
>
> (C) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(b)(2). As the language of the Rule itself makes clear, Rule 37 provides a district court with a variety of potential sanctions which it may apply to a wide range of circumstances – potential sanctions extend from payment of expenses and similar monetary sanctions at one end of the spectrum to default judgment or dismissal of the action on the other. *See generally* FED. R. CIV. P. 37; *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) ("We have noted that district courts possess 'wide discretion' in imposing sanctions under Rule 37.") (quoting *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1365 (2d Cir. 1991)); *Xiao Hong Zheng v. Perfect Team Corp.*, 739 Fed. App'x 658, 661

6

(2d Cir. 2018) ("Rule 37(b)(2)(A) empowers a district court to impose 'just' sanctions on a party for noncompliance with a discovery order.").

As the Second Circuit has stated,

> [d]isciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). In effectuating these purposes and determining whether and which sanctions under Rule 37 are appropriate, courts consider several well-known, non-exhaustive factors. "These include: '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'" *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009) (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)). While dismissal of an action (in the case of a plaintiff's non-compliance) or entry of default judgment (in the case of a defendant's non-compliance) are extreme measures, in certain circumstances they may be appropriate. *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 450-51 (2d Cir. 2013) ("Certain Rule 37 remedies—dismissing a complaint or entering judgment against a defendant—are severe sanctions, but they may be appropriate in 'extreme situations,' as 'when a court finds willfulness, bad faith, or any fault on the part of the' noncompliant party.") (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)).

The Court also takes into account Plaintiff's *pro se* status in reviewing Defendants' motion papers and the underlying issue concerning Plaintiff's non-compliance. However, "Plaintiff's status as a *pro se* litigant does not relieve [him] of [his] obligation to adhere to all applicable procedural rules." *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31, 2017); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]ro se status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotations and citations omitted).

B.  **Application to the Facts**

In his Complaint, Plaintiff alleges, among other things, that prior to his undergoing a circumcision procedure on December 18, 2014 at the VA Medical Center in Northport, New York, the Defendant physicians failed to perform certain tests and, as a result of the circumcision procedure, plaintiff became impotent. Compl. ¶¶ 25-27. This action is brought pursuant to the Federal Toward Claims Act and Plaintiff charges Defendants with medical malpractice, lack of informed consent and negligence.

As an initial matter, and as Defendants correctly point out in their motion, to prevail on a medical malpractice claim under New York law, a plaintiff must be able to establish "(1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994). Moreover, "New York law provides that, in a medical malpractice case, 'except as to matters within the ordinary experience and knowledge of laymen . . . expert medical opinion evidence is required' to make out both of these elements." *Molina v. United States*, No. 11-CV-04097, 2015 WL 4394045, at *9 (E.D.N.Y. July 16, 2015) (quoting *Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995)); *Sitts v.United States*, 811 F. 2d 736, 739 (2d Cir. 1987) (explaining that under New

York law "unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice") (quoting *Keane v. Sloan-Kettering Institute for Cancer Research,* 96 A.D.2d 505, 506, 464 N.Y.S.2d 548, 549 (2d Dep't 1983)). Therefore, as the Court explained to Plaintiff multiple times, his retention of a medical expert is a prerequisite to his ability to meet his burden on the merits of his claim.

As outlined above, in reviewing Defendants' motion and the underlying facts, the Court considers (1) the willfulness and reason for Plaintiff's non-compliance, (2) the efficacy of lesser sanctions, (3) the duration of the period of noncompliance, and (4) whether the Plaintiff had been warned of the consequences of non-compliance. *Agiwal*, 555 F.3d at 302-03. Here, all but possibly one of these factors weighs in favor of granting Defendants' motion and dismissing the Complaint, as explained below.

With respect to the length of non-compliance, setting aside the adjournments related to Plaintiff's attempt to effect service and to retain counsel, Plaintiff's failure to comply with discovery directives related to his HIPAA authorizations and Defendants' document requests extended from, at a minimum, mid-July 2018 (two weeks following the Initial Conference), *see* DE 16, to the most recent conference on November 28, 2018. *See* DE 20. Plaintiff's failure to retain a necessary medical expert extended, at a minimum, from the September 25, 2018 Discovery Status Conference, *see* DE 18, to the November 28, 2018 conference. *See* DE 20. While these periods may not be viewed as objectively lengthy – two and half and two months, respectively – they should not be viewed in a vacuum. Rather, they are indicative of a larger failure of Plaintiff to actively participate in this litigation. This is best illustrated by the fact that, although the Complaint was filed on June 5, 2017, service was not effected until December 22,

2017.  And, as of November 28, 2018, no discovery had been exchanged.  These delays were almost exclusively the result of Plaintiff's inaction.

With respect to whether Plaintiff was warned of the consequences of non-compliance, the Court advised Plaintiff multiple times that he needed to retain an expert and to comply with discovery obligations and that his failure to complete these tasks meant that he was running the risk of his lawsuit being dismissed.  *See* DE 16, 18, 20.

As to the efficacy of lesser sanctions, in light of the nature of Plaintiff's non-compliance, particularly his failure to retain a medical expert, there is nothing the Court can do to resolve this issue.  *See Sitts*, 811 F. 2d at 742 (finding that since plaintiff had no medical expert who would testify for him at trial, and since plaintiff did not identify such an expert prior to the court-imposed deadline, the District Court properly found that plaintiff's failure to have such an expert was dispositive, requiring the entry of judgment in favor of the defendant as a matter of law); *Urena v. Yan Wolfson, M.D.,* 09-CV-01107, 202 WL 958529, at *5 (E.D.N.Y. Mar. 20, 2012) ("This requirement for a plaintiff to submit expert medical opinion applies equally to *pro se* inmate plaintiffs.").  Here, without an expert, this action is fatally flawed.

And finally, with respect to the willfulness of Plaintiff's non-compliance, while his failure to retain an expert may not necessarily be considered "willful" in the sense that he attempted to but was unable to retain one, under the circumstances of this case the Court finds that Plaintiff Arnett's omissions were willful.  His failure to participate in discovery despite warnings of the consequences, his failure to provide the necessary HIPAA authorizations despite specific Orders from the Court to do so on multiple occasions, and his general failure to comply with the Orders of the Court all support the conclusion that this case cannot proceed.  *Cf. Fisher v. Richmond, The Am. Intl. Univ. in London, Inc.*, 18-2477-CV, 2019 WL 2024815, at *2 (2d Cir.

10

May 8, 2019) (denying motion for sanctions where defendant ultimately provided corrected transcript and court concluded there was no indication that defendant acted in bad faith); *Shcherbakovskiy,* 490 F.3d at 1352 ("[T]he sanction of dismissal should not be imposed under Rule 37 unless [the party's conduct] is due to willfulness, bad faith, or any fault of the [party].") (internal quotation marks omitted).

### IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Cogan that Defendants' motion to dismiss the Complaint as an appropriate sanction under Rule 37 be GRANTED

### V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. In the case of a **party proceeding *pro se*, the *Pro Se* Plaintiff Arnett must file his objections in writing with the Clerk of the Court within the prescribed time period noted above. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Brian Cogan and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Cogan prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Defendants' counsel is directed to serve a copy of this Report & Recommendation forthwith upon the pro se Plaintiff by overnight mail and first-class mail and to file proof of such service on ECF by July 29, 2019**.

Dated: Central Islip, New York
      July 24, 2019

SO ORDERED.

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge